All right, next case is U.S. v. Harris. All right, good morning, Ms. Murray. You have reserved two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. May it please the Court, Jane Ann Murray for Ms. Harris. Your Honors, whether we apply a relaxed standard here or a plain error standard of review, it is our position that the District Court erred in ordering as a special condition of my client's supervised release that her prior psychological and psychiatric records, her prior drug treatment records, and the pre-sentence report be turned over to her health care providers during probation. I'm going to first address the issue of the pre-sentence report, and then I'll address the issue of the medical records. And if you could, you probably will address this in the course of discussing these points, but under either standard, we'd have to find that the error was clear or obvious, and we generally have defined that to mean that there's Supreme Court or Second Circuit precedent on point saying you shouldn't do that. So if you could direct us to what you think is the clearest precedent. Well, Your Honor, first of all, I will just respond to the government's position that this is a routine provision included in Southern District judgments. And to be sure, there are a bunch of judges who do put this in the judgment and routinely order these kinds of documents to be turned over. But it's just been in the Southern District. It's not a precedent. But I would suggest that at least a fair number of district judges are doing it as a medical routine. They must not think that there's any precedent out there from our court or the Supreme Court telling them that they shouldn't do that. I mean, you could tell us if you think that they're overlooking some clear precedent, but maybe if you could tell us why they're all wrong. So this court in Charmer Industries said that turning over a pre-sentence report to a third party requires a compelling demonstration that the disclosure of the report is required to meet the ends of justice. That would be the precedent that I would rely on here for not disclosing the pre-sentence report to treatment providers. And I have a few ñ They have the same confidentiality obligation. I don't think you're arguing that both with respect to the treatment records, past treatment records, as well as the PSR, that the substance abuse providers and the mental health counseling, that somehow they could disseminate that. You're not arguing that, right? I'm not arguing that they could disseminate it, although the pre-sentence report is a highly confidential document. I know, but isn't it self-evident that if you're treating somebody, for example, for substance abuse, you would want to get their pre-sentence report so you could see what that history of substance abuse was, including prior convictions or arrests. Your client was arrested in 2023, charged with driving under the influence and tested positive for marijuana. So if someone's treating her for substance abuse, wouldn't they want to know that she had that encounter with the police? Well, Your Honor, there are certain aspects of the pre-sentence report that may be specifically relevant to the treatment that will be provided by that drug treatment counselor, but they don't need to read about, hypothetically speaking, I'm not saying this is in my client's pre-sentence report, truancy when you were in high school or long-term issues with your ex-partner. See, I would have thought that would have been the most relevant material. If I'm trying to treat somebody, and I'm not an expert in there, but if I'm trying to treat someone for mental health or substance abuse, you would think that the treatment provider would want to know what is it in this person's life that is causing them to turn to drugs, right? They're self-medicating. Were they abused as a child? Did they have some medical condition? Did they have some traumatic experiences in life? And then you'd want to know the family history, right, because we have the family history in there. We have work history. Has the person never been able to hold a job? It seems to me those, which are probably the most sensitive parts of a PSR, are also the most relevant for a treatment provider to have a full picture of the human being, so to say, well, now I'm able to treat you better, no? Your Honor, I certainly can't argue with that, but we have several problems here. The pre-sentence report is an all-encompassing report with lots of additional information and extraneous information. I guess my question is, what do you mean by extraneous? It would seem to me that when I think of a PSR, I think of the parts that are very specific to the offense, right, the guidelines calculation and all that. And, of course, that's the sort of thing that was regularly reprinted in briefs and is discussed in open court. And if you're saying the extraneous information, I usually think of that as the things that are not strictly tied to the offense conduct, strictly speaking. But those are the parts that strike me as most useful for a treatment provider. Or tell me what you mean by extraneous information that would be not helpful for a treatment provider to help the person. Well, Your Honor, potentially financial information, issues related to financial problems in the past. And, again, I understand Your Honor's point that all of this could be relevant. But back to that. So if I'm broke, I'm going bankrupt. Let's say I've hidden it from my family that I've lost my job and I'm deeply in debt. I would have thought that would be a prime mover that might lead a desperate person to turn to drugs, to calm themselves or something. So that's what I'm saying. Why is that not? It seems more relevant for the treatment provider than not. Your Honor, all extremely relevant arguments for why maybe certain aspects of a pre-sentence report should be available to a treatment provider. But we are dealing with the issue. There is the separate issue that pre-sentence reports can be rife with inaccuracies. This is extremely well documented. But that's usually resolved at sentencing, right? Everybody objects. If you find things that are inaccurate, the judge will make factual findings by preponderance of the evidence and excise or to the deletion of inaccurate information. So I guess I'm not comfortable with the proposition that a complete PSR that has been evaluated by a district judge is rife with inaccuracies. I don't know where that comes from. Your Honor, the Supreme Court's decision in Mathis and Deschamps recognized that criminal records containing non-elemental facts will often be inaccurate. Because it's not in the interest of the defense counsel to challenge immaterial facts. And so certain criminal court records cannot be relied upon simply because they weren't objected to by defense counsel. Defense counsels frequently do not – Presumably the mental health counsel, if they saw something in there with respect to a prior conviction and believe this, as Judge Nardini pointed out, related to the treatment, would ask them about it. And if there was some inaccuracy about it, they would say, well, that's not what happened. This is what really happened. There's nothing – that would be part of the treatment process for – to go through any criminal record and how it might have impacted the life and have a discussion about it. It's not like she's being – she's going to be sanctioned for some inaccuracy in the report, right? It's all in the context of treatment. Your Honor, keep in mind that my client had the same mental health treatment provider for nine years. So we have to now address the issue of whether inserting into that relationship a very government-centric description of my client's criminal conduct should be inserted into that relationship. The client has some autonomy. I have a question about the standard of review, going back to the standard of review. Yes. The court ordered the inclusion of the pre-sentence report in two separate provisions for conditions of supervisory release. But as to one of them, it was not inserted into that order until after the sentencing proceeding. For one of them, it was added when the court wrote the judgment subsequent to the time when the defendant had the opportunity to object. As to that one, I don't understand why we should be talking about the plain error standard because the defendant didn't have the opportunity to object as to that one. So however reasonable it might have been to turn over the pre-sentence report as to the other one where there was no objection, in this case, isn't it a different standard of review? Your Honor, this is what I argued in my brief, that the relaxed error should apply because there was this discrepancy between the oral pronouncement and the written judgment. The ordinary rule is that the terms of the sentence must be given at the sentencing proceeding in the presence of the defendant when the defendant has the opportunity to object to them and to get the objection straightened out if either rejected or an amendment of the proposed sentence. That is correct, Your Honor. So you're looking at that from the point of view of plain error or any reduction of the issue of was it right or wrong to add that after the sentencing proceeding? It is correct, Your Honor, that in the written judgment, Judge Swain included the pre-sentence report with respect to mental health providers but did not in her oral pronouncement. In addition, the whole concept of delegation to the probation officer was first pronounced at the oral sentencing and then later included in the written judgment. Your Honor, this court in MATA had a situation where conditions were added at the oral pronouncement and even that was considered not to be sufficient notice to defense counsel to be able to sufficiently challenge the specific conditions alleged in that case. Your Honor, I'm over time. I just want to go back to Judge LaValle's point. I didn't understand you in your brief. You can correct me if I'm wrong. You did argue that this distinction should inform whether we should apply plain error or relaxed plain error. But I didn't see anywhere in your brief where you argued that because it was added in the judgment that this should be stricken because it was a material difference between the oral pronouncement and the written judgment. I don't think you made that argument. I did not make that argument, Your Honor. And I will point out that this was previewed. The issue of disclosure of the pre-sentence report to all providers was disclosed in the pre-sentence report. But the issue of delegation of this issue to the probation officer was first presented at the oral sentencing and then put in the written judgment. And I submit that it would be reasonable for defense counsel to review the pre-sentence report and see that there is an authorization to turn materials over to health care providers and presume that this would still be done on a case-by-case basis subject to the client's consent. The client has some autonomy and rights over her own medical information, past medical information. I assume we don't agree that the client should dictate whether or not this should go to the provider. But the issue of whether it should be the judge or the probation officer, is it your position that assuming, as we discussed, we think much, if not all, of the pre-sentence report would be potentially useful to the treatment provider, that a judge has to go line by line through a pre-sentence report and say, okay, this should be given, this should not be given. Is that what you think should happen? I think, Your Honor, that- It's usually when a liberty interest is implicated. I don't think there's any liberty interest implicated in this situation. Well, I submit the liberty interest is in my client's rights to privacy in her own medical information and in her rights to the integrity of her relationship with her providers. And so it's not a question of line by line through the pre-sentence report. It would be turning over these documents to one or two providers throughout the course of a probation. Would the probation officer, under your view, be allowed to talk to the treatment provider and give the treatment provider background about the defendant? I think that the- I do believe that the probation officer would be able to talk to the treatment provider and provide information orally. So I guess that's why I'm trying to see if we accept the proposition that a probation officer can talk to the treatment provider, then we're beyond the point you're saying, well, the government can intrude in the relationship somehow. Because this is a supervised relationship now. It's a court-mandated relationship that she have one with a therapist, if it's deemed appropriate. And if the probation officer can say, hey, I need you to know, therapist, that if she says, and I'm making this up, if a defendant claims that they've never used drugs, well, you need to know that they've been using cocaine and ecstasy and heroin for the last 20 years, that they're an orphan, that let me tell you all about it. If that's essentially the same information that was in the PSR, I don't see how we can draw a meaningful distinction between handing over the information in writing or having it orally communicated by the probation officer. Because then we start, I don't know what the line drawing exercise becomes. Your Honor, I would start the line drawing at the documents themselves, especially the presentence report, which is a unique document that includes material that's been collected from many, many sources, many of which may have been filled with inaccuracies. So it's one thing for a probation officer to say this person has had a drug problem, we've seen it in the past, we've seen some arrests throughout the pretrial process. It's a very different thing to then turning over the entirety of the presentence report as a blanket authorization in every case. I submit that this should be done on a case-by-case basis with the defendant having an opportunity to say no, I don't want that turned over to my provider, especially a provider I've had a long-term relationship with for nine years. Going back to the issue of the condition as to which the turning over of the presentence report was added only after the sentence had been imposed, is there any obstacle to our remanding allowing resentencing at which the judge would then direct the turning over of the presentence report and your client would have the opportunity to object? Your Honor, I think there's no impediment to Your Honor's doing that. I would note that the oral judgment did authorize the presentence report going to drug treatment providers, individuals who often may not have the same kinds of training and experience as one would have as a psychologist or a psychiatrist. Have you in your briefing to us said everything that you would say to the district judge in objection if there was a resentencing with respect to the turning over of the presentence report to the mental health program? Have you told us in your brief and in your oral argument everything that you would say on behalf of your client in opposition to turning over the presentence report? Your Honor, if I was back in front of the district judge, I would go through that presentence report in detail in a sealed submission about the aspects of that report that I believe should not be turned over to any provider and aspects of that report that may well be inaccurate. I'm not in a position, it's not in the record, inaccuracies before this court because they weren't objected to below because they weren't material. It wasn't necessary and it's a very reasonable thing for a defense attorney. Doesn't the defendant always have the ability to ask for a modification of the conditions? That could be done tomorrow. You don't have to wait for us to remand it. You could go before the judge and say, Judge, I know this wasn't raised initially, but we believe there's sensitive information there. We would ask that you order the probation officer not to turn over paragraph 101. That could happen tomorrow. I could go back, Your Honor, and ask that. We don't have to remand for that. That's correct, Your Honor. I could go back, but I do think that it's worth your honors considering this issue because it's appearing in a whole bunch of judgments in the Southern District of New York, not in any other district I've seen across the country, not something this court has approved previously, and I submit that the practice of turning over presentence reports to providers should be cabined by this court. All right. Thank you. So I understand you're saying in response to Judge Bianco's question that the inclusion of this after the sentence caused no harm to your client because you retained the ability to go back to the district judge and say, Judge, you added this after imposing the sentence. Had you done it during the sentencing, we had objections we would make to specific passages, and we ask you to now reconsider those in the light of these specific objections. You can do that, so then there's no harm. Your Honor, we do not know whether those reports have already been turned over to her providers, so I would submit that it's not clear that there has been no harm. But, yes, I could go back and ask for this provision to be excised from the... Because she's on supervised release now. She's on supervised release now. That's correct, Your Honor. All right. Thank you. We'll hear from the government. May it please the court. My name is Robert Sobelman. I represent the United States on this appeal and in the district court below. Your Honors, I want to reorient the discussion for a moment. This is not about whether the court has previously approved a condition like this or not. On plain error review, it's about whether this court or the Supreme Court has previously disapproved of a condition like this, and the defense admits there is no such case. Charmer, as this court already acknowledges, is about a completely different situation where a state attorney general is trying to get a hold of a pre-sentence report. It's an unsealing standard, which would be met for the reasons we explained in our brief here anyway, but it certainly is not controlling authority that undermines the condition that was imposed in this case. I thought, Ms. Murray, she didn't articulate it today, but I thought the argument was that the district court didn't get reasons for doing this and that we've said over and over again that when you pose special conditions, you have to give a reason, and she believes this is unjustified and that, therefore, it should be sent back because there was no reasons given. Your Honor, that's a slightly different point, but it also fails under plain error review. But even in an abusive discretion standard, it would fail anyway. There's no error here. It is self-evident for many of the reasons this court has pointed out during the argument already that this condition is completely appropriate in this case. Ms. Harris is someone who has had a long history of mental health and substance abuse difficulties. That's in the public record. It was detailed in her sentencing submission. It was discussed at the sentencing. It was her main argument at sentencing for leniency, and the court discussed at sentencing that that was a significant factor the court was going to take into account. These conditions, to turn to a moment to Judge LaValle's question about notice, plain error review, rigorous plain error review applies here in light of the notice that Ms. Harris was given. It was in the conditions for the authorizations for both conditions were in the 2022 PSR, page 27, and that includes the authorization to provide the PSR to the treatment providers both for substance abuse and for mental health treatment. The same conditions were again in the 2024 PSR, page 35. Ms. Harris did not object to the 2022 PSR. She did not object to the 2024 PSR. At the sentencing proceeding, the court asked her attorney, even though you did not object before, do you have any objections now? And there were none. Not to these conditions, and certainly not to any of the facts or information in the pre-sentence report, much of which— Well, that's to the drug treatment provider, right? No, Your Honor. That was as to both. She had no objection to the PSR. I'm talking about the oral pronouncement. Yes, Your Honor. When the court described its proposed sentence before imposing it, this is page 173 of the appendix, it described the authorization to release the PSR and other records to the substance abuse treatment provider. And then on page 174 of the appendix, it described the same authorization but did not expressly mention the PSR. Now, I think there's an argument to be made that because the PSR includes psychiatric and psychological evaluations and information, it would be subsumed under that authorization anyway, but it's beside the point because Ms. Harris didn't object to the PSR in 2022. She didn't object to the PSR in 2024. And for plain error purposes— There's a difference between objecting, knowing that the PSR has proposed something, and wanting to judge a war or something, right? I mean, the PSR, if you don't object to the PSR, there's an argument that you don't object that that's what the proposal is. Yes, Your Honor. That's the proposal, but that's not saying that you know that that's what the court has done, because the court may or may not follow. But I don't know. I think that may be analytically distinct. Your Honor, the government views it as the same. It was in the PSR not once but twice. Years went by. That's more a question of was she on notice that this was something in play, not was she on notice that this is what was imposed, that she was on notice of what the judge ultimately decided to do, right? Those are two distinct things. They are, Your Honor. But for the purposes of plain error review, which is what— But for the purposes of Judge LaValle's point about the difference between oral pronouncement and the written judgment, what was in the PSR doesn't matter, right? It doesn't ultimately control, but it does give Ms. Harris notice that the district court might impose that condition. But those are two different things. I think the point is if the PSR had said I recommend an upward departure and the court imposes a sentence, the district court then does something and imposes a sentence that's above the guidelines but doesn't say is it a variance, is it a departure, the fact that the PSR recommended a departure doesn't inform us as to what the district court did. Was it a departure? Was it a variance? Did the district court misunderstood what the guidelines were? You can't say because the PSR said it, it must be the thing that the judge was doing. That's what we're just saying. Those are two analytically distinct things. The PSR is the probation office speaking, and then the district court can adopt factual findings and make them its own. But unless the court says I am now adopting and imposing the conditions on page 22 and 23 of the PSR, the district court hasn't then taken the PSR's conditions and taken them and made them its own. Yes, Your Honor, and the court did essentially read the same conditions that were in the PSR. It would be essentially. That's the fudge word, right? Because if there's a difference, there's a difference. Yes, Your Honor. There is that minor difference that it didn't expressly mention the PSR in that one condition. It does appear, of course, in the judgment. The judge didn't say I'm going to follow the recommendations of the PSR. Did she say I'm going to adopt all the conditions as laid out in the PSR? I don't believe she said that. But what's important to note here is Ms. Harris was on notice this condition may be imposed. She did not object to it in advance, understood that, Your Honor, is focusing on whether the PSR itself was mentioned as to this condition. But the fact that it then appears in the judgment is simply a reasonable clarification of the oral pronouncement. It is not a different condition. Can we turn to the merits of this about why you think it isn't a problem? Obviously, your opponent thinks it is a problem to turn it over. But why, in your view, would this be permissible? Yes, Your Honor. The authorization that the district court imposed here as part of these two conditions advances the rehabilitation and public safety objectives of the special conditions themselves. This is a routine authorization. The cases we mentioned a number of in our brief, those were just cases I happened to handle and looked at the judgments. I suspect they're in virtually- Is it true that this is a Southern District practice? Ms. Murray said that this is only Southern District. Your Honor, we didn't research whether this exists outside the Southern District. It seemed pretty straightforward that this is absolutely routine and appropriate. Yeah, actually, I'm curious. Is it, as far as you know, if you know, routine across all the Southern District judges? Or just some of them happen to have this practice? I don't know. We did not make a study to look at every judge on the bench. It's a large district, obviously. Well, but you have the same probation office, and I didn't know if it's the same thing that's always recommended every time by probation. And then, as a matter of course, as far as you know, the district courts do it because they think it's a good idea. That's the government's experience, is that it's in every condition of this sort. The cases referenced in our brief, I simply went back through my old cases, and in every case that there's a mental health condition or a substance abuse condition, there was an authorization like this by every judge in every case that I took a look at. And so I imagine it's universal, and it's probably something that's included in every PSR that has a condition like this. It certainly was not crafted for Ms. Harris in any way or sought to be some type of invasion of her relationship with her treatment provider, which, of course, it isn't. Because this information in the PSR is a mix of things that are publicly available, like a description of her offense conduct, and things that mostly she reported. Within the physical condition section, the mental health section, the substance use section, most of that information in this PSR and every other are things that are reported by the defendant themselves. And providing that to a treatment provider with whom they have either a confidential or possibly privileged relationship certainly doesn't violate anything. It doesn't violate their relationship. It doesn't unseal the PSR in some way. And at bottom, on plainer review, if the defense cannot identify a case where this court or the Supreme Court has held that a condition like this is improper, that's really the end of the inquiry. And for that reason and the others we've discussed in our brief, this court should affirm. Do you know if the PSR has been, in fact, disclosed to the treatment providers or not? No, Your Honor, that's not in the record or something we're otherwise aware of. So you don't think that someone could go to the district judge tomorrow on the defendant's behalf and try to make some modification if they thought there was some issue, correct? The government's understanding is that the court would have authority to modify the conditions of supervised release if it needed to. All right. Thank you. Ms. Murray, you have two minutes remaining. Your Honors, I would just like to address that issue of the propriety of the probation officer stepping into this treatment provider relationship with the client. And Judge Nardini, you talked about how important some of this information could be, how useful it could be, why can't a probation officer just get on the phone and talk to them? I think we're talking a slippery slope of invasion in a protected relationship. And how much do we want to give discretion to the probation officer to be able to do that? I submit this is not one of those ministerial things that is talked about in the Peterson case, for example, where the probation officer is simply administering the sentence decided by the judge. I think we're getting into that area where the probation officer is exercising discretion that impacts a liberty interest, and that liberty interest is my client's interest in the privacy of her own information and in the sanctity and autonomy of her relationship with her health care provider. I submit to you that there's no compelling reason, and the judge did not give any reason. We're not talking about a privilege issue, right? Because we're not talking about a condition that allows the treatment provider to pump information out to the probation officer that I don't know if there is any privilege in it. But let's say the treatment provider were a psychiatrist, so the doctor. The condition only provides for information to be injected in so that the psychiatrist has more information, the hypothetical psychiatrist has more information to provide treatment. I can't imagine a world where a doctor wishes that the doctor had less information to treat the patient. The doctor may wish to have that information, but Ms. Harris may not wish certain of that information to be shared. Ms. Harris could have thought about that before she committed a crime and subjected herself now to the control of the court, which is supervising, which means exercising some level of control over her during supervised release. The fact is she is not a simple citizen at large who is seeking a doctor's treatment on her own. This is one who the court is saying thou shalt consult a doctor or treatment provider. So I don't know that she gets to complain that the court is sticking its nose into it. Your Honor, I would have much less issue with the court being involved in that and on a case-by-case basis deciding when the materials get turned over. The issue here is delegation to the probation officer to do it. In response to my question before, you didn't want the judge, for example, to go through the PSR and circle which paragraphs should be disclosed to the treatment provider? I submit that it wouldn't be that difficult in a situation. And how about the patient records? If there's a stack of patient records going back 10 years of mental health treatment, can the probation officer decide which of those should be provided or the judge has to go through the stack of 10 years of medical records? Your Honor, I think that the treatment provider can ask for releases, and if those releases aren't signed, can then raise the issue, then it can go to the judge and the judge decides. As a practical matter, how many times is this going to end up in court? Very rarely, but when you're dealing with a pre-sentence report, which really I do want to clarify here, this is not, as the government says, the definitive factual account of the defendant's behavior. It is the government's definitive factual account of the defendant's behavior. Are these health providers, are they subject to a confidentiality requirement? I would assume so, Your Honor, yes. Well, so can you give me, I'm puzzled. What is an example of a piece of information that it's better not to turn it over to the, not to make the mental health care provider aware of it? What is an example of that? Your Honor, I submit that if you're in a nine-year relationship with your mental health therapist, that there is, you do not want a total third party to come in with their description of how horrible you are in that relationship. Of course. She may be in denial. I mean, when I think of a PSR, you say it's the government's version. What I've mostly seen in PSRs is they literally have a caption that says, the government's version of the offense. Paragraphs follow. The defendant's version, where the defendant gives its alternate version, no, no, no, it really happened this way. And then all sorts of interviews with parents and aunts and uncles and former employers. And so I thought you, by turning over a PSR to the treatment provider, you're giving the PSR, or you're giving the treatment provider a richer mosaic of information. You're not just giving a one-sided view. That's the great advantage of it. That's why the court likes PSRs. We don't want to just hear one-side story. With respect to the offense, you usually are getting a one-sided story, Your Honor, because it's often not in the defendant's interest to start challenging the description of the offense. If it's non-elemental, then just like in the categorical approach, and the Supreme Court has recognized it, the defense may make a strategic decision not to challenge it. So specifically with respect to the offense itself, that is a very one-sided view, Your Honor. Thank you very much.